IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TEVIUS STAFFORD TURNER,                   :

        Petitioner,

    v.                                                    :          Case No. 3:22-cv-303

WARDEN, MARION                                         :          JUDGE WALTER H. RICE
CORRECTIONAL INSTITUTION,

        Respondent.                        :

---

DECISION AND ENTRY ADOPTING MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATIONS (DOC. #20) AND SUPPLEMENTAL REPORT AND
RECOMMENDATIONS (DOC. #27), OVERRULING ALL OBJECTIONS OF
PETITIONER TEVIUS STAFFORD TURNER THERETO (DOCS. ##25 AND 30) AND
OVERRULING PETITION FOR WRIT OF HABEAS CORPUS (DOC. #3); JUDGMENT
TO ENTER IN FAVOR OF RESPONDENT WARDEN, MARION CORRECTIONAL
INSTITUTION, AND AGAINST PETITIONER; PETITIONER DENIED A CERTIFICATE
OF APPEALABILITY AND RIGHT TO APPEAL *IN FORMA PAUPERIS*;
TERMINATION ENTRY

---

This matter is before the Court on Magistrate Judge Michael R. Merz's Report
and Recommendations, Doc. #22, and Supplemental Report and Recommendations,
Doc. # 27, and the Objections thereto of Petitioner Tevius Stafford Turner. Docs.
#25, 30. This Court has reviewed said Reports, the applicable law, and the
Objections thereto, and has conducted a thorough *de novo* review of the Petition for
Writ of Habeas Corpus, state court record and exhibits, return of writ, Petitioner's
Reply and related filings. Docs. ##3, 8, 9, and 16.

For the reasons set forth below, the Court adopts all Reports and Recommendations and OVERRULES all Objections thereto, and, in doing so, OVERRULES the Petition.

## I.   Procedural Background

On November 28, 2016, Turner was indicted by a grand jury in a six-count indictment which included one count of aggravated murder (O.R.C. § 2903.01(A), Count One), two counts of murder (O.R.C. §§ 2903.02(A), Count Two & 2903.02(B), Count Three), one count of felonious assault (O.R.C. § 2903.11(A)(1), Count Four), one count of tampering with evidence (O.R.C. § 2921.12(A)(1), Count Five) and one count of improperly handling a firearm in a motor vehicle (O.R.C. § 2923.16(B), Count Six). Record, Doc. #8, PageID ##78–80. Turner pleaded not guilty to all counts. *Id.* at PageID #81.

Following a jury trial, Turner was found not guilty of aggravated murder (Count One), but guilty of both counts of murder, as well as the counts of felonious assault, tampering with evidence, and improperly handling a firearm in a motor vehicle (Counts Two through Six). Doc. #3, PageID #49. At sentencing, the trial court merged Counts Two through Four and opted to sentence Turner on Count Two. Doc. #8, PageID ##118–21. On September 5, 2017, Turner was sentenced to a term of imprisonment of eighteen years to life. *Id.*

Turner then filed an appeal of his sentence to the Second District Court of Appeals, arguing four assignments of error: (1) Insufficient evidence to prove murder under O.R.C. §§ 2903.02(A) & (B); (2) permitting a witness to refresh her memory

2

via use of the 911 dispatch log; (3) failure to provide a jury instruction for reckless homicide and involuntary manslaughter; and (4) failure to conduct a hearing on counsel's challenge to the racial makeup of the jury pool. Doc. #8, PageID ##132–45. On January 18, 2019, the Court of Appeals affirmed in part and reversed in part and remanded the case to the trial court for further proceedings, agreeing that the jury should have been given an instruction on reckless homicide. *Id.* at PageID ##168, 181; *State v. Turner*, 2d Dist. Clark Cnty. No. 2017-CA-78, 2019-Ohio-144, ¶ 38 (Jan. 18, 2019) ("*Turner I*"). When the appellate court in *Turner I* overturned Turner's conviction, it declined to rule on the sufficiency of evidence regarding the merged offenses because, under Ohio case law, a finding of guilt without a resulting sentence is not defined as a conviction and, therefore, is not subject to appeal. 2019-Ohio-144 at ¶22.

Following that decision, Turner remained in prison. On April 20, 2020, after more than a year of inactivity on his case, Turner filed a motion to dismiss for violation of his right to a speedy trial. Doc. #3, PageID #36; Record, Doc. #8, PageID ##202–11 (citing U.S. Const. amend. VI; Ohio Const. art I, § 10). The trial court denied this motion on August 14, 2020. Doc. #8, PageID #217*.* At the September 9, 2020 resentencing, the trial court sentenced Turner to a term of incarceration of eighteen years to life on Count Three as well as concurrent sentences on Counts Five and Six. *Id.* at PageID ##222–23.

Turner then filed an appeal of his resentencing to the Second District Court of Appeals, arguing a single assignment of error: the trial court should not be permitted

3

to resentence Turner because the decision by the Court of Appeals required a new trial. Doc. #8, PageID ##271–87. On June 30, 2021, the Court of Appeals affirmed the sentence and overruled Turner's lone assignment of error. *Id.* at PageID ##310–18; *State v. Turner*, 2d Dist. Clark Cnty. No. 2020-CA-49, 2021-Ohio-2216 (June 30, 2021) ("*Turner II*"). Notably, after he was resentenced, Turner failed to challenge the validity of the guilty verdicts for felony murder and felonious assault (Counts Three and Four). *Turner II*, 2021-Ohio-2216 at ¶11. Turner then filed a notice of appeal to the Ohio Supreme Court, which was declined by the Court on October 26, 2021. *State v. Turner*, 175 N.E.3d 576, 2021-Ohio-3730 (Ohio 2021).

On October 27, 2022, Turner filed the instant petition for a writ of habeas corpus. His stated claims are: Denial of the right to a trial by jury and the effective representation of counsel as guaranteed by the Sixth and Fourteenth Amendments (Claim One); and Denial of speedy trial rights as guaranteed by the Sixth and Fourteenth Amendments (Claim Two). Doc. #3, PageID ##38–40. The Magistrate Judge has filed a Report and Recommendations ("R&R"), Doc. #20, as well as a Supplemental R&R. Doc. #27. Turner has filed objections to both R&Rs. Doc. ##25, 30.

The petition is ripe for decision.

## II.  Factual Background

Factual findings by a state court "shall be presumed to be correct," unless rebutted "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Because Turner has not provided

any evidence to rebut the presumption of correctness, this Court adopts the factual

record as presented by the Ohio Second District Court of Appeals.

In summarizing the evidence submitted at trial and the facts underlying

Turner's convictions, the Second District presented the facts as follows:

> Turner was the manager of a Springfield-area hotel where Evan Stewart
> had worked as a cook until being fired. On November 18, 2016,
> Stewart arrived at the hotel before noon to pick up his final paycheck.
> Turner greeted Stewart, placed Stewart's paycheck and some cash on
> the hotel's front desk, and asked Stewart to sign over the paycheck to
> repay money Turner previously had loaned to Stewart. The cash was
> intended to compensate for the difference between the amount of the
> paycheck and what Stewart owed Turner on the personal loan. An
> argument about Stewart's termination ensued. When Turner walked
> away to attend to other business matters, Stewart left with both his
> paycheck and the cash.
>
> Stewart proceeded to a local convenience store in a Chevy Malibu
> driven by Melody Turner, his cousin.[1] Accompanied by hotel employee
> Leanna Mills, Turner thereafter drove to the same location in his black
> BMW. Upon arriving, Turner parked his car next to Melody's Malibu.
> Stewart already had entered the store and unsuccessfully attempted to
> cash his paycheck. Turner met him inside and again requested the
> check, but Stewart refused to surrender it. Stewart then left the store
> and got into the passenger's seat of the Malibu, where Melody was
> waiting in the driver's seat.
>
> Turner also exited the store and returned to his BMW, where he
> retrieved a handgun from the center console. Turner approached the
> passenger's side window of the Malibu and reached across Stewart
> with his left hand to grab an envelope (presumably containing either
> Stewart's paycheck or Turner's cash) while holding the gun in his right
> hand, pointed toward Stewart.
>
> At trial, the State played video recordings from the store's security
> cameras of Turner's and Stewart's encounters both inside and outside

---

[1] "Although Stewart's cousin and appellant Turner share the same last name, they are not related.
To avoid confusion, [the court] will refer to Melody Turner by her first name." *Turner I*, 2019-Ohio-
144 at n.3.

the store. Stewart testified that the Malibu "was already in reverse" when Turner walked up to the passenger side and reached inside. Stewart said that while the car was backing up, he and Turner "tussled" as Stewart tried to remove Turner's left arm from the Malibu's passenger window. Stewart claimed, however, that he never grabbed or touched the gun. He testified that the gun was in Turner's right hand with Turner's finger on the trigger. Stewart said that, as Melody shifted the Malibu into drive and pulled forward, he heard a gunshot, looked over, and saw Melody bleeding and unresponsive with her foot on the gas pedal. Stewart took the wheel of the moving vehicle and steered it into an intersection where he managed to stop.

Melody died as the result of a single gunshot to the head. Stewart promptly identified the shooter as Turner, whom police located a few hours later on Interstate 75 in Kentucky near the Tennessee border. The gun, which Turner claimed to have thrown into a grassy area somewhere along that highway, was not recovered.

Testifying in his own defense at trial, Turner admitted having a dispute with Stewart about the paycheck. He also admitted retrieving a handgun from his BMW and approaching the passenger's side of the Malibu with the gun in his right hand. Turner stated that he only intended to "scare" Stewart into giving him back either the paycheck or the cash. Instead, with Turner's arm and upper body inside the Malibu, he and Stewart began to struggle over the weapon. Turner testified that Stewart grabbed the gun while the vehicle was moving and that the gun "just went off." Turner claimed that he "never intended to hurt anyone."

On cross examination, Turner testified that he recently had acquired the gun for protection but did not realize that it was loaded. "I've never purchased any bullets. * * * I had never put any ammo in it. I never did anything. I [just] put it in the middle console." He also denied "racking" a round into the chamber and claimed that his finger was not on the trigger when the weapon fired.

Mills, Turner's passenger, testified that upon exiting the store, Turner returned to his BMW and opened the center console before walking to the Malibu where Stewart was seated. She heard "a noise * * * like a cocking sound" - "like [he was] cocking his gun" - as Turner and Stewart argued. Mills saw the two men "tussling" through the car window. With Turner leaning into the Malibu, Mills heard Stewart tell the driver of the Malibu "to pull off," then heard a gunshot.

6

Mills recalled Turner's pulling his BMW alongside the Malibu after the shooting. As Stewart attempted to steer the Malibu from the passenger's seat, he told Turner that Melody was dead. According to Mills, Turner just kept demanding his money. Mills also testified that, after the shooting, Turner got back into his car and stated, "I don't know why I just did that."

Detective Ronald W. Jordan of the Springfield Police Department testified that while investigating Melody's death, he viewed the surveillance video from outside the store where the shooting occurred. He said that video depicted a man "with a firearm in his right hand" near a car identified as Turner's. However, the detective did not identify the specific type of weapon shown.

Based on his training and experience, Detective Jordan testified that some revolvers have "a cocking mechanism" that makes "[a] clicking sound" when the gun is cocked, while other, "single-action" revolvers do not need to be cocked in order to be fired. He further testified that a semiautomatic handgun cannot be fired until a bullet is loaded into the chamber by moving the "slide" back and forward again, which makes "a distinctive sound that anyone that's been around firearms recognizes * * *." Although he first described that sliding action as making "a clicking sound," he clarified that "I wouldn't necessarily say it's a click" when the slide moves forward. After simulating for the jury the motion that would be required to chamber a round in a semiautomatic weapon, Detective Jordan opined that the store videotape depicted Turner's arms positioned in a manner "similar" to what Detective Jordan had just demonstrated. On cross-examination, however, Detective Jordan confirmed that the weapon used in Melody's shooting never was recovered, and that no ammunition or gun-cleaning equipment was found during searches of Turner's residence and car.

The State also called Detective Jordan as a rebuttal witness. Detective Jordan testified that a handgun has a trigger guard to help prevent inadvertent firing. He explained that "you would have to place your finger inside the trigger guard to depress the trigger," which moves "[b]ack towards the person that has it in their hand."

*Turner I*, 2019-Ohio-144 at ¶¶2–13.

### III.  Analysis

In the Supplemental Report and Recommendations, the Magistrate Judge concluded that Turner's ineffective assistance of counsel claim is procedurally defaulted; that reckless homicide is not a lesser included offense of felony murder; and that the ineffective assistance of counsel claim is meritless.  Supplemental R&R, Doc. #27, PageID ##1387–91.  In response, Turner states two claims under which he argues entitlement to a habeas petition.

Turner's first claim is a denial of the right to a trial by jury and the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments.  Doc. #3, PageID #38.  To determine whether this claim has been procedurally defaulted, the Sixth Circuit applies a four-part analysis:

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . .
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . .
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (citations omitted); *see also*

*Wainwright v. Sykes*, 433 U.S. 72 (1977).

8

Under the Ohio Rules of Appellate Procedure, claims of ineffective assistance of counsel must be presented by an application to reopen the appeal filed within ninety days of the judgment. OHIO R. APP. P. 26(B)(1). Here, the ninety-day-clock would have started on the date that the Supreme Court of Ohio declined jurisdiction of his appeal of *Turner II*, October 26, 2021. Turner's time to file the Rule 26(B) Application therefore elapsed on January 24, 2022. Because Turner failed to comply with Rule 26(B), the first element of the test is met. Turner's failure to file the Application has foreclosed the Court of Appeals from enforcing the state procedural sanction, but under Sixth Circuit precedent, "the time constraints of Rule 26(B) [have been] firmly established and regularly followed," and therefore the second element is met. *Wogenstahl v. Mitchell*, 668 F.3d 307, 322 (6th Cir. 2012) (internal quotation omitted). For the same reason, Rule 26(B) is also an adequate and independent ground on which to find procedural fault, meeting the third element. *Id.*

Turner attempts to meet his burden under the fourth element with two arguments, both of which fall short. First, he argues that he sought a stay from the Magistrate Judge in this case to be able to file the Rule 26(B) Application in state court. Doc. #30, PageID #1398. However, this application was filed on April 21, 2023, more than a year after the January 2022 deadline for filing the application. Turner's stance that he intended to show deference to the court and wait for a response before filing is meritless, considering that the deadline in which to file a Rule 26(B) Application had long since passed before he asked the court for the stay.

Turner next argues that his untimeliness should be excused because he believed he had indeed prevailed in *Turner I*. Doc. #30, PageID #1398. This argument seemingly ignores that the clock for the Rule 26(B) application was not counting those days between *Turner I* and *Turner II*. Instead, it started only when the *Turner II* case was concluded by the Supreme Court of Ohio declining jurisdiction in October 2021. Neither of the rationales excuses Turner's untimeliness in failing to file a 26(B) application and, because the other *Maupin* elements are met, his claim of ineffective assistance of counsel has been procedurally defaulted and therefore barred.

Turner's second ground is a denial of his speedy trial rights as guaranteed by the Sixth and Fourteenth Amendments. Doc. #3, PageID #40. He bases this claim on the nineteenth-month delay before he was resentenced after *Turner I*. *Id.* at PageID ##58–61. Under Turner's view, the delay prejudiced him because "[t]he Second District Court of Appeals' decision entitled Mr. Turner to a new trial." *Id.* at PageID #59. This view, however, misstates what the Court of Appeals concluded in *Turner I* and what they reiterated in *Turner II*.

In *Turner I*, the Court of Appeals reversed Turner's purposeful murder (Count Two) conviction only and affirmed as to all other convictions. 2019-Ohio-144 at ¶47. In *Turner II*, the Court of Appeals attempted to reiterate this by stating that Turner's guilty verdicts on the other convictions were still available to be sentenced on. 2021-Ohio-2216 at ¶20. The Court of Appeals was clear that Turner was only entitled to a new trial if the State wanted to retry the single overturned count of

10

purposeful murder, Count Two. When the State opted not to retry Turner on Count Two, the trial court was free to resentence Turner pursuant to one of the other Counts on which he was convicted.

Although the Court understands that Turner believed he was entitled to a new trial, this is simply a mistake of law. The decision in *Turner II*, clarifying that he was not entitled to a new trial, is not an unreasonable application of Supreme Court precedent. 28 U.S.C. § 2254(d)(1). Therefore, any delay in sentencing was not constitutionally infirm and Ground Two should be dismissed.

## IV. Conclusion

Based on the reasoning set forth above, this Court ADOPTS the Initial and Supplemental Reports, Docs. ##20 & 27, in their entireties and OVERRULES Petitioner's objections thereto. Docs. ##25 & 30.

The Court herein dismisses the case for lack of a cognizable claim for habeas relief under 28 U.S.C. § 2254. Judgement will enter in favor of the Respondent and against Petitioner.

As Petitioner has not made a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and reasonable jurists would not disagree, he is denied a certificate of appealability. On that basis, this Court certifies to the United States Court of Appeals for the Sixth Circuit that any appeal would be objectively frivolous and recommends that Petitioner be denied leave to proceed on appeal *in forma pauperis*.

The captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: August 28, 2024

WALTER H. RICE
UNITED STATES DISTRICT JUDGE